

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 16, 1949

Hon. Amos Harper
County Attorney
Gaines County
Seminole, Texas

Opinion No. V-973.

Re: Striking delinquent tax entries
made prior to determination
land in another county.

Dear Sir:

We quote the following excerpts from your letter of
October 17, 1949:

"I respectfully request your opinion concerning
a problem of taxation that confronts the Tax Assessor
and Collector of this County and upon which I have been
unable to locate any legal authority sufficient to enable
me to advise that officer.

"There is contained in the files of your office,
Opinion No. O-1125, addressed to Alton T. Freeman,
then County Attorney of Gaines County, which was ap-
proved by Gerald C. Mann, Attorney General, on Aug-
ust 31, 1939.

"This opinion, and the opinion request from which
it quotes, recites an involved fact situation which oc-
curred several years ago and which had the effect of
either relocating or moving the North line of Gaines
County South from the point along which it originally
was thought to run. As a result of those facts, certain
sections along the North line of the County which ap-
peared to be in Gaines County according to the official
Gaines County map prepared by the General Land Of-
fice, dated March, 1922, which is that office's latest
map of this County, apparently ceased to be in Gaines
County.

"Under authority of what is now Article 7194,
R.C.S., 1925, the General Land Office of Texas had pre-
viously furnished our Tax Assessor and Collector with
abstracts of the surveys of land in this County and those
abstracts showed these northern surveys to be in Gaines
County. Accordingly, they were listed on the tax rolls
and taxes were levied and assessed as to them by Gaines

County for many years, up until the date of the moving of the line South, which is mentioned in the former opinion of the Attorney General. Since then, we have not assessed or levied taxes against these lands.

"As a further result of such moving of our North boundary line, our Northeast corner of the County is further south than what is recognized, for tax purposes, to be the Northwest corner of Dawson County, whereas, according to the Act of the Legislature prescribing our boundaries, the two corners are supposed to be one and the same. (Act of August 21, 1876, page 234.)

"Upon the strength of the above mentioned opinion of the then Attorney General, a suit was filed which involved, under the pleadings, a challenge to the validity of the action which moved, or attempted to move, the boundary south. This suit was never tried upon its merits, but a demurrer to such petition was sustained by the trial court, such action being sustained by a subsequent action of the Supreme Court of Texas to be found in the case of YOAKUM COUNTY, ET AL, VS. GAINES COUNTY, 163 S.W. 2nd, 393. The opinion of the Court of Civil Appeals in this case gives more details of the matters of fact and law involved.

"There are on the Delinquent Tax Roll of this County a number of entries showing delinquent taxes due to the State, County and other taxing units whose taxes were collected by that officer, upon these lands for years prior to the moving of this line south, or its relocation, as you may please to call it.

"In the light of these facts, will you please favor me with your opinion as to the answers to the following questions:

"FIRST - By what procedure, if at all, may the Tax Assessor of this County strike the above mentioned entries of delinquent taxes from his delinquent tax roll?

"SECOND - If he may not strike them from his delinquent tax roll, then what effect, if any, does the above mentioned relocation of the county line have upon the right of myself, or the delinquent tax attorney of this county, to prosecute an ordinary delinquent tax suit to foreclose the tax lien upon these lands for nonpayment of such taxes?"

The opinion of the Supreme Court in the Yoakum County case, above-cited, summarizes the allegations of the petition filed by Gaines County in the suit which was instituted against Yoakum and Terry Counties to set aside the boundary line surveyed by A. L. Harris in 1935 and agreed to by each of the counties acting through its commissioners' court and its county court. Plaintiff's prayer was that the court adjudge the north line of Gaines County to be the line as surveyed by Col. D. S. Woods in 1900 or in the alternative that the north boundary be along certain survey lines enumerated in the petition or in the alternative that the court fix "the true boundary line between the plaintiff and the defendant counties."

The opinion points out that the field notes of the Woods line, run in 1900, before any of the three counties were organized, was not marked on the ground as required by law and that the calls in the field notes show that there is room for doubt as to the location on the ground of the Woods line. Further it was alleged that the south line of certain surveys were treated by the counties as being the boundary line and that as between Gaines County and Terry County a portion of the boundary line was considered to be along the south line of Block D of another survey. But, said the court, it was not alleged that this line is on the Woods line.

The court first upheld the power of the commissioners' courts and the county courts to enter into a binding agreement as to the boundary line stating that since counties have the power to litigate boundary disputes they have the power to settle them out of court so long as they do not violate any provision of the Constitution. Gaines County contended that Article IX, Section 1, Subdivision 3 of the Texas Constitution had been violated. A portion of that subdivision provides that no part of any existing county shall be detached from it and attached to another existing county until the proposition for such change shall have been submitted to a vote of the electors of both counties and shall have received a majority of those voting on the question in each county. The contention was rejected, and the court said at page 397:

"There is nothing in the record to show that it was the purpose of the three counties, in entering the foregoing order, to detach land from one county whose boundary lines were already established, and attach same to some other county. On the contrary, it clearly appears that the sole purpose was to definitely fix the undefined boundary line between the three counties.

" . . .

"The allegations contained in respondent's petition clearly show that the boundary line between Gaines

County and Yoakum and Terry counties was indefinite, and that the three counties desired to definitely settle the boundary line between such counties. To that end the commissioners' courts of the three counties met and provided means, in accordance with the law, to survey and definitely fix the boundary line between the three counties. Prior to the time in 1935 when the three counties provided a method for the establishment of such boundary line, there existed in the minds of the three commissioners' courts an issue of fact, and they passed the foregoing order, which settled that fact as between them."

Since no territory was detached from Gaines County as a result of the agreement and order attacked in this suit, necessarily the lands against which your delinquent tax rolls show delinquent taxes were never within Gaines County and should never have been on Gaines County tax rolls. This being so, the assessment of taxes against these lands was invalid.

Articles 7346 and 7347, V.C.S., prescribe the procedure to be followed in such cases. We refer you to these articles in full. You will notice that after the list of properties (against which invalid assessments were made) has been compiled, the commissioners' court may order a cancellation of such properties in said list as are shown to have been invalidly assessed and shall then refer the list to the Tax Assessor to be reassessed. In this case, of course, no assessment or reassessment will be made by the assessor. The Comptroller will furnish you with a Certificate of Cancellation form, same being Form 99, which recites in substance that the Commissioners' Court of _____ County finds the prior reported delinquencies of said properties erroneous for _____ reason and orders said delinquencies cancelled. This form is made in triplicate. After it has been approved by the Comptroller and two copies returned to you, your Tax Assessor and Collector may record such cancellation on his rolls. The Comptroller will list the lands erroneously assessed and send same to the tax assessor of the proper county, Art. 7353, V.C.S. Said lands may then be back assessed for taxes by the Tax Assessor of the proper county, Art. 7207, V.C.S.

Our answer to your first question necessarily disposes of your second question.

## SUMMARY

Since land against which taxes were assessed was not within county, the assessments were invalid;

and Articles 7346 and 7347, V.C.S., are applicable. The Comptroller provides Certificate of Cancellation forms. After said Certificates have been duly approved, the Tax Assessor and Collector may record the cancellations on his rolls. The Comptroller will send list of lands erroneously assessed to tax assessor of proper county, Art. 7353, V.C.S., and said lands may then be back assessed for taxes by the tax assessor of the proper county, Art. 7207, V.C.S.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Marietta McGregor Creel

Mrs. Marietta McGregor Creel
Assistant

MMC/mwb

APPROVED

Joe R. Greenhill

FIRST ASSISTANT
ATTORNEY GENERAL